## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Johnson Brothers Liquor Company, | Case No. _____ |
| Plaintiff, | Demand for Jury Trial |
| v. | |
| Bacardi U.S.A., Inc., and Brown-Forman Corporation, | **Complaint** |
| Defendants. | |

Plaintiff Johnson Brothers Liquor Company ("Johnson Brothers") brings this Complaint under the Minnesota Franchise Act and Section 1 of the Sherman Act, 15 U.S.C. § 1, for its causes of action against Defendants Bacardi U.S.A., Inc. ("Bacardi"), and Brown-Forman Corporation ("Brown-Forman"), and alleges and states as follows:

## Introduction

1.      Johnson Brothers seeks damages for the injuries it sustained due to Defendants' violations of state and federal law. At the close of 2010, Bacardi and Brown-Forman, two of the largest alcoholic beverage producers in the United States, jointly agreed to terminate their distributorships with Johnson Brothers without good cause.

2.      For decades, Johnson Brothers had served as the distributor of Bacardi and Brown-Forman brands throughout the Midwest.

3.     Over the years, Johnson Brothers expended much capital, time, and effort in establishing the Defendants' products. Johnson Brothers' award-winning performance brought much success to both Bacardi and Brown-Forman.

4.     On December 30, 2010, without warning, Bacardi notified Johnson Brothers of its intent to terminate the parties' distributor agreement for North Dakota. Two days later, Brown-Forman notified Johnson Brothers of its intent to terminate distributor agreements for Minnesota, North Dakota, South Dakota, and Iowa. Neither Defendant claims to have had good cause for terminating Johnson Brothers' distribution rights. Both Bacardi and Brown-Forman made plans to transfer Johnson Brothers' distribution rights in the Dakotas to Republic National Distributing Company ("RNDC"), the second largest distributor of premium wine and spirits in the United States.

5.     Because Johnson Brothers enjoys protection as a "franchisee" under the Minnesota Franchise Act, Bacardi's and Brown-Forman's termination of the distributorships without cause was in violation of Minnesota Statute § 80C.14.

6.     Moreover, Bacardi and Brown-Forman's agreement to not deal with Johnson Brothers, and their subsequent transfer of distribution rights to RNDC, violates Section 1 of the Sherman Act, 15 U.S.C. § 1.

# The Parties

### A.   Johnson Brothers Liquor Company

7.      Johnson Brothers Liquor Company is a Minnesota corporation with its principal place of business at 1999 Shepard Road, St. Paul, Minnesota 55116. Johnson Brothers is a licensed distributor of alcoholic beverages and has been in business since 1953. Johnson Brothers Liquor Company has several subsidiaries through which it services North Dakota, South Dakota, and Iowa, among other states.

8.      Since 1980, Johnson Brothers Liquor Company has serviced North Dakota through its North Dakota subsidiary, Johnson Brothers Northwest Beverages, Inc., which owns Ed Phillips & Sons Company of North Dakota as well as Superior Wine & Spirits. Since 1981, Johnson Brothers Liquor Company has serviced South Dakota through its Sioux Falls office—Johnson Brothers Famous Brands—and its Rapid City office—Johnson Brothers Western Wholesale.

9.      Each Johnson Brothers business has common officers with the parent company—Johnson Brothers Liquor Company—in Minnesota, and is controlled and managed by the Minnesota operation.

### B.   Bacardi U.S.A., Inc.

10.      Bacardi U.S.A., Inc. is a Delaware corporation with its principal place of business at 2701 Le Jeune Road, Coral Gables, Florida 33134. Bacardi U.S.A., as the U.S. import and distribution arm of Bacardi Limited, engages in the business of producing, importing, distributing, marketing,

promoting, and selling alcoholic beverages throughout the United States, including Minnesota. Bacardi's brands include: rum, gin, vodka, vermouth, sparkling wines, scotch whiskey, tequila, and liqueur.

### C.   Brown-Forman Corporation

11.     Brown-Forman Corporation is a Delaware corporation with its principal place of business at 850 Dixie Highway, Louisville, Kentucky 40210. Like Bacardi, Brown-Forman engages in the business of producing, importing, distributing, marketing, promoting, and selling alcoholic beverages throughout the United States, including Minnesota. In fiscal year 2010, Brown-Forman had sales of over $2.4 billion and net income of $449 million. Brown-Forman's brands include: whiskey, vodka, champagne, liqueur, tequila, and wines.

## Jurisdiction and Venue

12.     This is an action brought pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, for damages caused by violations of the antitrust laws of the United States, including Section 1 of the Sherman Act, 15 U.S.C. § 1.

13.     The jurisdiction of this Court is founded on those sections and on 28 U.S.C. § 1331, which provides this Court with original jurisdiction over actions arising under the laws of the United States, and 28 U.S.C. § 1337, which provides this Court with original jurisdiction over any action arising under federal laws regulating commerce or protecting commerce against restraints and monopolies.

14.     Bacardi and Brown-Forman engage in interstate commerce as they both transact business with distributors, brokers, retailers, and customers throughout the United States, including Minnesota, and across state lines. Bacardi's and Brown-Forman's anticompetitive activities and wrongful termination of Johnson Brothers' distribution rights were within the flow of, and had a proximate, direct, substantial, and reasonably foreseeable effect on interstate commerce.

15.     This action is also brought pursuant to Minnesota Statute § 80C.14 as the parties' relationships constitute "franchises" under the Minnesota Franchise Act, Minnesota Statute § 80C.01, *et. seq.*

16.     The jurisdiction of this Court over this additional state claim is founded on 28 U.S.C. § 1367, which provides this Court with supplemental jurisdiction over claims based on violations of state law that are so related to the federal law claims within the Court's original jurisdiction that they form part of the same case or controversy.

17.     This Court may also assert diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, and because diversity of citizenship exists between the parties. Complete diversity exists here because, for purposes of diversity jurisdiction, Plaintiff Johnson Brothers is a citizen of Minnesota, Defendant Bacardi is a citizen of Delaware and Florida, and Defendant Brown-Forman is a citizen of Delaware and Kentucky.

18.     Venue in the District of Minnesota is proper under 28 U.S.C. § 1391 and 15 U.S.C. §§ 15 and 22 because Defendants are found or have an

agent or transact business in this district, and because the wrongful conduct at issue is directed into this district.

## Factual Allegations

### A.    Bacardi violated the Minnesota Franchise Act by terminating Johnson Brothers' distribution rights without good cause.

19.     The business relationship between Johnson Brothers and Bacardi spans over thirty years.

20.     Over this period of time, Johnson Brothers expended considerable capital, time, and effort in establishing Bacardi products—including rum, whiskey, gin, vodka, tequila, vermouth, liqueur, and wine products—in the Midwest. Bacardi has acknowledged Johnson Brothers' superlative performance through a series of awards and accolades.

21.     On August 6, 2004, Bacardi and Ed Phillips & Sons—a business of Johnson Brothers—entered into a distributor agreement.

22.     In the 2004 distributor agreement, Bacardi appointed Ed Phillips & Sons as a distributor of certain Bacardi products—including rum, whiskey, gin, vodka, tequila, sparkling wine, vermouth, and liqueur—for the State of North Dakota.

23.     Under the 2004 distributor agreement, Bacardi granted Ed Phillips & Sons the right to engage in the business of distributing goods using Bacardi's trade name, trademark, or other commercial symbol used in connection with the products.

6

24.     Under the 2004 distributor agreement, Bacardi and Ed Phillips & Sons had a community of interest in the marketing of Bacardi products at wholesale because the companies agreed to mutually establish goals and objectives for the sale and distribution of the products for purpose of planning effective advertising, promotions, and sales programs.

25.     Although the 2004 distributor agreement concerned the distribution of Bacardi products in North Dakota, the parent company, Johnson Brothers, effectively managed and carried out many essential functions of the distributorship from St. Paul, Minnesota. Moreover, the relationship was negotiated between Bacardi and representatives of Johnson Brothers' St. Paul, Minnesota office.

26.     Under the 2004 distributor agreement, Johnson Brothers agreed to make annual "expenditures"—equal to 10% of its gross profit—in support of promotional, advertising, and sales programs for Bacardi products.

27.     The 2004 distributor agreement distinguished said expenditures from ordinary business costs by prohibiting Johnson Brothers from using any portion of the expenditures to pay costs incurred by Johnson Brothers in the ordinary course of business.

28.     For example, since 2008, Johnson Brothers made annual expenditures of approximately $110,000 pursuant to the 2004 distributor agreement.

29.     On December 30, 2010, Bacardi served written notice upon Johnson Brothers to terminate the 2004 distributor agreement effective

7

March 31, 2011. *See* December 30, 2010, letter from Bacardi U.S.A., Inc., to Northwest Beverages, Inc., as Exhibit A.

30.     Bacardi did not have—nor does it claim to have had—good cause for terminating Johnson Brothers' distribution rights.

31.     On information and belief, Bacardi has transferred Johnson Brothers' distribution rights for North Dakota to RNDC.

**B.     Brown-Forman violated the Minnesota Franchise Act by terminating Johnson Brothers' distribution rights without good cause.**

32.     The business relationship between Johnson Brothers and Brown-Forman spans over twenty-five years.

33.     Over this period of time, Johnson Brothers expended considerable capital, time, and effort in establishing Brown-Forman products—including whiskey, vodka, tequila, liqueur, and wine products—in the Midwest. Over the years, Brown-Forman has acknowledged Johnson Brothers' superlative performance as its distributor through a series of awards and accolades.

34.     Between 1987 and 1998, Brown-Forman and Johnson Brothers entered into at least five distributor agreements for Minnesota, North Dakota, South Dakota, and Iowa.

35.     On July 1, 1987, the parties entered into three separate distributor agreements. Under one agreement, Brown-Forman appointed Northwest Beverages—a subsidiary of Johnson Brothers—as the distributor of certain Brown-Forman products in North Dakota. Under the other two

8

agreements, Brown-Forman granted Famous Brands and Western
Wholesale—two businesses of Johnson Brothers—the right to distribute and
promote Brown-Forman products in South Dakota.

36.     Under a June 7, 1989, distributor agreement, Brown-Forman
Beverage Company—a division of Brown-Forman Corporation—appointed
Johnson Brothers as the distributor of all Brown-Forman products in
Minnesota.

37.     Under a July 8, 1998, distributor agreement, Brown-Forman
Beverages Worldwide—a division of Brown-Forman Corporation—
appointed Johnson Brothers as the distributor of certain Brown-Forman
wine products in Iowa.

38.     Although the distributor agreements described herein
concerned the distribution of Brown-Forman products in North Dakota,
South Dakota, and Iowa in addition to Minnesota, the parent company,
Johnson Brothers, effectively managed and carried out many essential
functions of the distributorships from St. Paul, Minnesota. Moreover, the
relationship was negotiated between Brown-Forman and representatives of
Johnson Brothers' St. Paul, Minnesota office.

39.     As a distributor of Brown-Forman products, Johnson Brothers
had the right to engage in the business of distributing goods using Brown-
Forman's trade name, trademark, or other commercial symbol within
Minnesota, North Dakota, South Dakota, and Iowa.

40.     As a distributor of Brown-Forman products, Johnson Brothers
agreed to invest or "bank" a portion of its gross profits to promote Brown-

Forman's brands. For example, since 2006, Johnson Brothers spent approximately $370,000 promoting Jack Daniels and Southern Comfort products in South Dakota. Since 2008, Johnson Brothers spent approximately $215,000 promoting Jack Daniels, Southern Comfort, Woodford Reserve, and Tuaca Liqueur products in North Dakota.

41.     Brown-Forman and Johnson Brothers had a community of interest in marketing Brown-Forman products because, as provided in the June 7, 1989, distributor agreement, for example, the companies shared "mutual goals" to enhance efficient and profitable sale and promotion of Brown-Forman brands.

42.     At the turn of the year, Brown-Forman gave oral notice to Johnson Brothers of its intent to terminate Johnson Brothers' distribution rights. On January 4, 2011, Brown-Forman served written notice upon Johnson Brothers to confirm its intent to terminate Johnson Brothers' wine distribution rights in Minnesota, wine and spirits distribution rights in Iowa, and all distribution rights in North and South Dakota. *See* January 4, 2011, letter from Brown-Forman to Johnson Brothers Liquor Company attached hereto as Exhibit B. In subsequent communications, Brown-Forman clarified that termination would be effective March 31, 2011.

43.     Brown-Forman did not have—nor does *it* claim to have had—good cause for terminating Johnson Brothers' distribution rights.

44.     On information and belief, Brown-Forman has transferred Johnson Brothers' distribution rights for North and South Dakota to RNDC.

**C.     Bacardi and Brown-Forman violated the antitrust laws by engaging in a concerted refusal to deal with Johnson Brothers.**

      **1.     Bacardi and Brown-Forman have made efforts to align their companies and jointly manage their brokers and distributors.**

     45.     Bacardi and Brown-Forman are direct competitors as each company produces and sells similar types of liquors, such as vodka, whiskey, tequila, liqueur, and wine products.

     46.     Despite being competitors, Bacardi and Brown-Forman have extensive contacts, are closely aligned, and engage in joint business conduct.

     47.     According to Brown-Forman's chief executive officer, Paul Varga, "Brown Forman has enjoyed a unique relationship with Bacardi in a number of markets across the globe over many years. Our existing arrangements in the U.S. and the U.K. and the renewed agreements in these European markets underscore our commitment to continue to seek mutually beneficial ways to collaborate where it makes strategic sense for both companies. We highly value our partnership with Bacardi and look forward to continuing this successful business relationship in the future."

     48.     According to Bacardi Limited's chief executive officer, Seamus McBride, "Bacardi has had a long and successful relationship with Brown-Forman encompassing many key regional and local markets—and these decisions allow our unique distribution partnerships to continue to flourish." When applied to Johnson Brothers, this "unique partnership" is nothing more than an agreement not to compete.

49.     For example, Bacardi and Brown-Forman have renewed contracts for Bacardi to distribute Brown-Forman brands in Belgium, Luxembourg, Denmark, Austria, Switzerland, Portugal and Andorra effective May 1, 2010. In addition, a contract was renewed for Brown-Forman to distribute the Bacardi portfolio of brands in the Czech Republic, also effective May 1, 2010.

50.     In fact, in its January 4, 2011, termination letter to Johnson Brothers, Brown-Forman admits that it is "moving to align [its] brands [with Bacardi's brands] in dedicated and focused distributor houses throughout the country."

### 2.     Bacardi and Brown-Forman's conduct is consistent with an agreement to not deal with Johnson Brothers.

51.     Faced with the prospect of competing against each other, Bacardi and Brown-Forman had two options: either embrace that competition, which would have resulted in lower prices for distributors, retailers, and individual consumers, or strategically align the two companies, conspire with each other, and jointly manage their distributor agreements.

52.     Bacardi and Brown-Forman performed nearly simultaneous, identical actions by providing termination notice of Johnson Brothers' distribution rights on December 30, 2010, and January 1, 2011, respectively.

53.     In fact, on January 18, 2011, Johnson Brothers' counsel wrote to Bacardi's and Brown-Forman's senior vice presidents and charged the

companies with taking a joint approach of appointing and managing their relationships with distributors. Neither company has offered any substantive procompetive explanation for their conduct.

### 3.   Bacardi and Brown-Forman's conduct was inconsistent with their independent economic interests.

54.     If Bacardi and Brown-Forman had acted independently, it would not have been in their legitimate economic self-interests to jointly terminate Johnson Brothers' distribution rights and establish a distributorship with RNDC, especially given Johnson Brothers' historic success as a competitor to RNDC.

55.     Johnson Brothers expended much capital, time, and effort in establishing the companies' products, bringing much success to both Bacardi and Brown-Forman.

56.     Johnson Brothers was a leading performer, winning a series of awards and accolades.

57.     For example, in 1988, Johnson Brothers received the prestigious "Corte Real Award," signifying its performance and membership in the exclusive "family" of Bacardi distributors. Johnson Brothers was nominated "Bacardi Distributor of the Year" over fourteen times and was named "Bacardi Distributor of the Year" three times. Over the years, Johnson Brothers never missed a Bacardi incentive period.

58.     The year 2010 was no exception to Johnson Brothers' superlative performance. In 2010, Ed Phillips and Sons—a business of

Johnson Brothers—was ranked fifth out of all Bacardi distributors across all Bacardi brands, and ranked first for Grey Goose vodka.

59.     In January 2011, Brown-Forman invited Johnson Brothers to the Brown-Forman "Road to 150" celebration at the Grand Del Mar, in recognition of Johnson Brothers' "brand building" during the "critical" holiday season, an effort which Brown-Forman acknowledged put it "in a strong position" for 2011.

60.     Absent an illegal agreement between Bacardi and Brown-Forman, each company would have the incentive to independently select its distributor in the relevant markets to maximize the promotion of each brand's products.

### 4.     Relevant market allegations.

61.     A relevant product market exists for the distribution of liquor, including rum and whiskey to retail stores, restaurants, and bars.

62.     The distribution of liquor is not reasonably interchangeable with the distribution of other products.

63.     The liquor-distribution business is relationship driven. Thus, participation in the liquor-distribution market requires a sizeable and seasoned salesforce with relationships with liquor purchasers across each state in which they operate.

64.     Liquor distributors compete directly against each other for the business of retailers, restaurants, and bars. This competition takes the form of discounts from list prices, rebates directed to end consumers or

purchasers, product demonstrations at liquor stores and bars, and advertising and promotional allowances for retailers, restaurants, and bars.

65.     If one liquor distributor offers a special rebate or promotion to purchasers, its competitors typically respond with similar rebates or promotions.

66.     Separate relevant geographic markets exist for the distribution of liquor in each of the following Upper Midwest states: North Dakota, South Dakota, Minnesota, and Iowa.

67.     Alternatively, the relevant geographic market is no broader than the distribution of liquor in the Upper Midwest as defined as Minnesota, North Dakota, South Dakota, and Iowa.

68.     A monopolist distributor of liquor in any of the relevant-market states could profitably increase prices to purchasers of liquor by five-to-ten percent without losing significant sales.

69.     Liquor distributors must be licensed in each state in which they operate and, at least in the states relevant to this case, must operate at least one warehouse in each state. Because of these regulatory restrictions, a purchaser of liquor cannot obtain liquor from anyone other than a liquor distributor licensed in its state. Likewise, liquor distillers such as Defendants cannot bring their products to market in a given state without contracting with a distributor licensed in that state.

70.     Barriers to entry are high in each of the relevant markets. No appreciable new distributor has entered any of the relevant markets in the past five years, with the exception of entering by acquiring an existing

distributor or existing rights or both. On information and belief, it would take at least five years for a liquor distributor from another state to enter one of the states in question *de novo* and gain a significant share of the market.

**5.      Bacardi and Brown-Forman's illegal agreement harmed competition in the relevant markets.**

71.      By agreeing to simultaneously terminate Johnson Brothers, both companies were able to transfer distribution rights to the same entity, RNDC.

72.      As a direct result of Bacardi and Brown-Forman's illegal agreement, RNDC now controls greater market share—for example, 99 percent of the market for whiskey and 95 percent of the market for rum—in at least the Dakotas.

73.      Using RNDC as a common distributor furthered Bacardi and Brown-Forman's goal to align the two companies and gain greater market share in the Midwest. It also eliminated competition between Bacardi and Brown-Forman, and Jim Beam (distiller of Jim Beam whiskey), and Cruzan International (distiller of Cruzan brand rums) which distribute its rum and whiskey products in North and South Dakota through RNDC.

**6.      Bacardi and Brown-Forman's illegal agreement caused injury to Johnson Brothers as well as injury to competition in North Dakota and South Dakota.**

74.      As a direct result of Defendants' termination of the distributorships, Johnson Brothers will lose over $5 million in total gross

profit per year. Johnson Brothers will lose $2 million from the terminated Bacardi distributorship in North Dakota, and will lose $3 million from the terminated Brown-Forman distributorships throughout the Midwest. As a direct result of Defendants' conduct, Ed Phillips & Sons has essentially been forced out of the markets for distributing rum, whiskey, gin, and imported cordials in North Dakota and South Dakota.

75.     Moreover, given Johnson Brothers' longstanding affiliation with Bacardi and Brown-Forman brands, it will be difficult for it to acquire distribution rights to other premium brands of whiskey and rum, thus foreclosing a significant channel of potential competition.

76.     But the injury caused by Defendants' concerted refusal to deal reaches beyond Johnson Brothers. Bacardi and Brown-Forman's anticompetitive activities have stifled or will stifle competition in the markets for distributing liquor in North Dakota and South Dakota, ultimately injuring retailers, such as liquor stores, grocery stores, and restaurants, as well as individual consumers.

77.     Before Bacardi and Brown-Forman jointly agreed to terminate their distributorships with Johnson Brothers, two distributors served North Dakota. The distributors were Johnson Brothers businesses—Northwest Beverages and Ed Phillips & Sons—and RNDC.

78.     With respect to the distribution of rum and whiskey, Johnson Brothers competed directly with RNDC. For example, in North Dakota, Johnson Brothers, marketing the Bacardi brand of rum, competed with RNDC, marketing the Cruzan brand of rum. Similarly, Johnson Brothers,

marketing the Jack Daniels brand of whiskey, competed with RNDC, marketing the Jim Beam brand of whiskey.

79.     Both Johnson Brothers and RNDC had every incentive to compete with each other. In attempt to beat out the competition and increase sales, each distributor offered discounts, "dealer-loading" programs, tasting programs, and on-premise promotional events to retailers. For example, if a retailer agreed to purchase a certain quantity of cases of liquor, the distributor reduced the sales price, offered free goods, or provided free product samples to the retailer's patrons.

80.     This competition created lower prices for liquor stores, grocery stores, and restaurants, and in turn, lower prices for end consumers.

81.     But Bacardi and Brown-Forman's illegal agreement and termination of Johnson Brothers brought drastic change to the North and South Dakota markets. Now, as a result of Bacardi and Brown-Forman's joint conduct, 99 percent of the market for whiskey and 95 percent of the market for rum is controlled by a single entity: RNDC.

82.     With RNDC's enhanced market power, the competition that previously existed between certain Bacardi/Brown-Forman products and their competitors no longer exists.

83.     Because RNDC now markets several brands that were once competitors—such as Bacardi rum and Cruzan rum, and Jack Daniels whiskey and Jim Beam whiskey—it no longer has the incentive to compete with the remaining distributor, Northwest Beverages, whose market share for rum and whiskey is negligible.

84.    Specifically, RNDC can stop offering discounted pricing and other promotions to retailers in the Dakotas without risking a decrease in market share because no meaningful competition exists.

85.    The alignment of Bacardi and Brown-Forman products in the hands of the distributor that also distributes Jim Beam and Cruzan products also reduces competition at the distiller level. This loss of competition will benefit Bacardi, Brown-Forman, Jim Beam, and Cruzan at the expense of liquor sellers and end consumers alike.

## Count I – Violation of the Minnesota Franchise Act
## (Against Bacardi)

86.    For this claim against Bacardi under the Minnesota Franchise Act, Minnesota Statute § 80C.01, *et. seq.*, Johnson Brothers incorporates by reference all preceding paragraphs as if fully set herein and further alleges as follows:

87.    The Minnesota Franchise Act applies to the August 6, 2004, distributor relationship between Johnson Brothers and Bacardi described herein because Johnson Brothers is a Minnesota corporation, and because many essential functions of the franchise were carried out in Johnson Brothers' St. Paul location.

88.    The distributor relationship described herein grants Johnson Brothers the right to engage in the business of distributing goods using Bacardi's trade name, trademark, or other commercial symbol.

89.     The distributor relationship described herein creates a community of interest between Johnson Brothers and Bacardi in the marketing of goods at wholesale, retail, or agreement.

90.     The distributor relationship described herein between Johnson Brothers and Bacardi requires Johnson Brothers to pay a "franchise fee" at least in the form of expenditures—equal to 10% of its gross profit—in support of Bacardi products.

91.     Johnson Brothers and Bacardi's relationship is a "franchise" under the Minnesota Franchise Act.

92.     Minnesota Statute § 80C.14 prohibits Bacardi from terminating the franchise without good cause.

93.     The 2004 distributor agreement's provision allowing for termination without cause is void.

94.     Bacardi terminated the franchise without "good cause" in violation of Minnesota Statute § 80C.14.

95.     Johnson Brothers did not fail to substantially comply with the material and reasonable franchise requirements imposed by the franchisor.

96.     As a result of the illegal termination of the parties' franchise, Johnson Brothers has suffered damages in an amount to be proven at trial.

## Count II – Violation of the Minnesota Franchise Act
## (Against Brown-Forman)

97.     For this claim against Brown-Forman under the Minnesota Franchise Act, Minnesota Statute § 80C.01, *et. seq.*, Johnson Brothers

incorporates by reference all preceding paragraphs as if fully set herein and further alleges as follows:

98.     The Minnesota Franchise Act applies to the distributor relationships between Johnson Brothers and Brown-Forman described herein because Johnson Brothers is a Minnesota corporation, and because many essential functions of the franchise were carried out in Johnson Brothers' St. Paul location.

99.     The distributor relationships between Johnson Brothers and Brown-Forman described herein grant Johnson Brothers the right to engage in the business of distributing goods using Brown-Forman's trade name, trademark, or other commercial symbol.

100.    The distributor relationships between Johnson Brothers and Brown-Forman described herein create a community of interest between Johnson Brothers and Brown-Forman in the marketing of goods at wholesale, retail, or agreement.

101.    The distributor relationships between Johnson Brothers and Brown-Forman described herein require Johnson Brothers to pay a "franchise fee" at least in the form of portions of its gross profits to promote Brown-Forman products.

102.    Johnson Brothers and Brown-Forman's relationship is a "franchise" under the Minnesota Franchise Act.

103.    Minnesota Statute § 80C.14 prohibits Brown-Forman from terminating the franchise without good cause.

104.    The distributor agreements' provisions allowing for termination without cause are void.

105.    Brown-Forman terminated the franchise without "good cause" in violation of Minnesota Statute § 80C.14.

106.    Johnson Brothers did not fail to substantially comply with the material and reasonable franchise requirements imposed by Brown-Forman, the franchisor.

107.    As a result of the illegal termination of the parties' franchise, Johnson Brothers has suffered damages in an amount to be proven at trial.

## Count III – Violation of Federal Antitrust Law
## (Against Both Defendants)

108.    For this claim against both Bacardi and Brown-Forman for damages under Section 4 of the Clayton Act, 15 U.S.C. § 15, for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, Johnson Brothers incorporates by reference all preceding paragraphs as if fully set herein and further alleges as follows:

109.    On information and belief, Defendants entered into an agreement to terminate Johnson Brothers' distribution rights without cause.

110.    On information and belief, both Defendants have actual knowledge of and knowingly participated in the agreement or conspiracy described herein.

111.   The agreement or conspiracy described herein constitutes an unlawful concerted refusal to deal that restrains interstate trade or commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

112.   Defendants' agreement has no legitimate business purpose. It achieves no legitimate efficiency or pro-competitive benefit to counterbalance the substantial anti-competitive effects it has caused in the markets for distributing liquor in North Dakota, South Dakota, Minnesota, and Iowa.

113.   Defendants' conduct substantially affects interstate commerce in the markets for distributing liquor in at least North Dakota and South Dakota.

114.   Johnson Brothers meets the statutory definition of a "person" required for a private cause of action for damages under Section 4 of the Clayton Act, 15 U.S.C. § 15(a).

115.   Johnson Brothers has suffered injury to its business or property by losing millions of dollars in gross profits under the distributor agreements and by being wrongly shut out of the markets for distributing liquor in at least North Dakota and South Dakota.

116.   Johnson Brothers' injury was substantially caused by Defendants' conduct because, but for Defendants' concerted refusal to deal with Johnson Brothers, Johnson Brothers would have realized its gross profits and would still hold a meaningful market share in the markets for distributing liquor in at least North Dakota and South Dakota.

117.     Defendants' antitrust violation caused injury to competition. Because the Defendants' products are aligned and controlled by the same distributor who also markets competing lines of liquor products, these companies will benefit by being able to control output, set prices, and ultimately control the markets in North and South Dakota.

118.     But for Bacardi and Brown-Forman's illegal agreement, Johnson Brothers would have competed on an individual basis for Bacardi and Brown-Forman contracts, which would have resulted in lower distributions costs and, in turn, lower costs for retailers and individual customers.

## Jury Trial Demanded

119.     Johnson Brothers requests a trial by jury on all issues so triable.

## Prayer for Relief

120.     WHEREFORE, Johnson Brothers requests that this Court award it judgment against Bacardi and Brown-Forman for damages in sum greater than $75,000, in an amount to be proved at trial; treble damages under the federal antitrust laws, specifically 15 U.S.C. § 15; pre- and post-judgment interest on its damages as allowed by law; attorneys' fees and costs of suit; and any other or additional relief that this Court deems just and proper

March 31, 2011

**Robins, Kaplan, Miller & Ciresi L.L.P.**

By: ___/s/ Matthew L. Woods_____
     Elliot S. Kaplan (#53624)
     Matthew L. Woods (#205278)

     2800 LaSalle Plaza
     800 LaSalle Avenue
     Minneapolis, MN 55402

     T: 612-349-8500
     F: 612-339-4181

*Attorneys for Plaintiff Johnson Brothers*

82038689.2