## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Johnson Brothers Liquor Company;
Johnson Brothers Northwest Beverages, Inc.,
d/b/a Ed Phillips & Sons Co. of North Dakota;
and Johnson Brothers Famous Brands, Inc.,
d/b/a Famous Brands and/or
Western Wholesale;

|  |  |
|---|---|
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER** |
| v. | Civil No. 11-824 ADM/JSM |

Bacardi U.S.A., Inc.; and
Brown-Forman Corporation,

Defendants.

---

Matthew L. Woods, Esq., Elliot S. Kaplan, Esq., and Scott M. Kranz, Esq., Robins Kaplan Miller & Ciresi LLP, Minneapolis, MN on behalf of Plaintiffs.

Marty Steinberg, Esq. and Laurie Uustal Mathews, Esq., Hunton & Williams, LLP, Miami, FL; Derek W. Moore, Esq., Jonathan S. Kanter, Esq., and Joseph J. Bial, Esq., Cadwalader, Wickersham & Taft LLP, Washington, DC; and Andrew M. Luger, Esq., Bethany D. Krueger, Esq., Erin Sindberg Porter, Esq., and John W. Ursu, Esq., Greene Espel PLLP, Minneapolis, MN on behalf of Defendant Bacardi U.S.A., Inc.

Timothy B. Hardwicke, Esq. and Daniel A. Griswold, Esq., Latham & Watkins LLP, and Andrew M. Luger, Esq., Bethany D. Krueger, Esq., Erin Sindberg Porter, Esq., and John W. Ursu, Esq., Greene Espel PLLP, Minneapolis, MN on behalf of Defendant Brown-Forman Corporation.

---

## I. INTRODUCTION

On September 7, 2011, the undersigned United States District Judge heard oral

arguments on Defendant Bacardi U.S.A., Inc.'s ("Bacardi") Motion to Dismiss First Amended

Complaint or for Transfer [Docket No. 24] ("Bacardi's Motion to Dismiss or Transfer"), on

Defendant Brown-Forman Corporation's ("Brown-Forman") Motion to Dismiss the First

Amended Complaint [Docket No. 26] ("Brown-Forman's Motion to Dismiss"), and on Bacardi's

Motion to Stay [Docket No. 30].  Brown-Forman's Motion to Stay or Transfer [Docket No. 66],

filed subsequent to oral argument of the other identified motions, will also be considered.

Plaintiffs Johnson Brothers Liquor Company ("Johnson Brothers Liquor"); Johnson

Brothers Northwest Beverages, Inc., d/b/a Ed Phillips & Sons Co. of North Dakota ("Ed Phillips

& Sons"); and Johnson Brothers Famous Brands, Inc., d/b/a Famous Brands and/or Western

Wholesale ("Famous Brands") assert claims under the Minnesota Franchise Act (the "MFA"),

Minn. Stat. Ch. 80C, as well as federal antitrust violations under Section 4 of the Clayton Act, 15

U.S.C. § 15, and Section 1 of the Sherman Act, 15 U.S.C. § 1, against Defendants (Bacardi and

Brown-Forman collectively are "Defendants").  For the reasons set forth below, Bacardi's

Motion to Dismiss or Transfer is granted, Brown-Forman's Motion to Dismiss is granted,

Bacardi's Motion to Stay is denied, and Brown-Forman's Motion to Stay or Transfer is denied.

## II.  BACKGROUND[1]

Defendant Bacardi produces, imports, distributes, markets, promotes, and sells alcoholic

beverages throughout the United States from its principal place of business in Coral Gables,

Florida.  Am. Compl. [Docket No. 22] ¶ 10.  Bacardi owns brands of rum, gin, vodka, vermouth,

sparkling wines, scotch whiskey, tequila, and liqueur.  Id. ¶ 10.  Defendant Brown-Forman

produces, imports, distributes, markets, promotes, and sells alcoholic beverages throughout the

United States from its principal place of business in Louisville, Kentucky.  Id. ¶ 11.  Brown-

Forman owns brands of whiskey, vodka, champagne, liqueur, tequila, and wines, including Jack

Daniel's Whiskey and Southern Comfort.  Id. ¶¶ 11, 40.  Plaintiffs (Johnson Brothers Liquor, Ed

Phillips & Sons, and Famous Brands are collectively "Plaintiffs") are in the business of

---

[1]  In considering Defendants' Motion to Dismiss, the Court considers the facts alleged in
Plaintiffs' Complaint to be true.  See Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

distributing alcoholic beverages.  Id. ¶ 7.  Ed Phillips & Sons is incorporated in and has its principal place of business in North Dakota, and it distributes alcoholic beverages in that state. Id. ¶¶ 7-8.  Famous Brands is incorporated in and has its principal place of business in South Dakota, and it distributes alcoholic beverages in that state.  Id.  Johnson Brothers Liquor is a Minnesota corporation with its principal place of business in St. Paul, Minnesota.  Id. ¶ 7.  Ed Phillips & Sons and Famous Brands are wholly-owned subsidiaries of Johnson Brothers Liquor and are controlled and managed by Johnson Brothers Liquor from its Minnesota office.  See id. ¶¶ 7-9, 25, 38.

Johnson Brothers Liquor and Bacardi have a business relationship that spans over thirty years.  Id. ¶ 19.  In August 2004, Bacardi and Ed Phillips & Sons entered into an Agreement (the "2004 North Dakota Agreement") for the distribution of certain Bacardi products in North Dakota.  Id. ¶¶ 21-24.  The terms of the 2004 North Dakota Agreement obligated Ed Phillips & Sons to make annual "expenditures" equal to 10% of Ed Phillips & Sons' gross profit in support of promotional, advertising, and sales programs for Bacardi products.  Id. ¶ 26.  Since 2008, these expenditures reached approximately $110,000 annually.  Id. ¶ 28.  The terms of the 2004 North Dakota Agreement gave either party the right to terminate the agreement on ninety days notice without cause.  Steinberg Decl. [Docket No. 34] Ex. 1 ("2004 North Dakota Agreement") § 9.2.  The 2004 North Dakota Agreement also provides a forum selection clause designating courts in Miami-Dade County, Florida, as the exclusive forum to litigate disputes arising from the agreement.  Id. § 11.2.

On December 31, 2010, Bacardi telephoned Johnson Brothers Liquor's Minnesota office and informed Johnson Brothers Liquor's vice president that Bacardi was terminating the 2004 North Dakota Agreement.  Am. Compl. ¶ 29.  Bacardi then sent to Ed Phillips & Sons, at its

Fargo, North Dakota office, a written notice of termination of the 2004 North Dakota

Agreement.  Id., Ex. A.  Bacardi then granted distribution rights for its products in North Dakota

to Republic National Distribution Company ("RNDC"), a competitor of Ed Phillips & Sons and

Johnson Brothers Liquor.  Id. ¶ 31.

Johnson Brothers Liquor and Brown-Forman have a business relationship that spans over

twenty-five years.  Id. ¶ 32.  Between 1987 and 1998, Brown-Forman entered into at least five

distributor agreements with Johnson Brothers Liquor or its subsidiaries covering Minnesota,

North Dakota, South Dakota, and Iowa.  Id. ¶ 34.  Specifically, in July 1987, Brown-Forman

entered into an agreement with Ed Phillips & Sons for distribution of certain Brown-Forman

products in North Dakota, and entered into two agreements with Famous Brands for distribution

of Brown-Forman products in South Dakota.  Id. ¶ 35.  In June 1989, Brown-Forman also

entered into an agreement with Johnson Brothers Liquor for distribution of all Brown-Forman

products in Minnesota.  Id. ¶ 36.  Finally, in July 1998, a division of Brown-Forman entered into

an agreement with Johnson Brothers Liquor for distribution of Brown-Forman wines in Iowa.

Id. ¶ 37.

Similar to the 2004 North Dakota Agreement, Brown-Forman's distribution agreements

with Johnson Brothers Liquor, or its subsidiaries, require the distributor to "bank" a portion of its

profits for use in promoting Brown-Forman products.  Id. ¶ 40.  Since 2006, Famous Brands has

spent $370,000 promoting Brown-Forman products in South Dakota.  See id.  Likewise, since

2008, Ed Phillips & Sons has spent $215,000 promoting Brown-Forman products in North

Dakota.  See id.  Furthermore, like the 2004 North Dakota Agreement, the various Brown-

Forman agreements with Plaintiffs allow either party to the agreement to terminate without

cause.  Hardwicke Decl. [Docket No. 38] Ex. 1 § 12, Ex. 2 § 12, Ex. 3 § 12, Ex. 4 § 12, Ex. 5 § 12.

On January 4, 2011, four days after Bacardi sent its notice of termination of the 2004 North Dakota Agreement, Brown-Forman sent notice to Johnson Brothers Liquor's Minnesota office to terminate Johnson Brothers Liquor's wine distribution rights in Minnesota, its wine and spirits distribution rights in Iowa, and to terminate all of Ed Phillips & Sons' distribution rights in North Dakota and all of Famous Brands' distribution rights in South Dakota.  Compl. ¶ 42, Ex. B.  Brown-Forman then transferred distribution rights for its products in North Dakota and South Dakota to RNDC.  Id. ¶ 44.

In the January 4, 2011 termination notice, Brown-Forman referenced its "national strategic distribution and broker alliance with Bacardi" and informed Plaintiffs that it was "moving to align" distribution of its brands with Bacardi.  Id. ¶ 50, Ex. B.  Furthermore, in public statements Brown-Forman has stated it has a "unique relationship" with Bacardi, seeks ways to "collaborate" with Bacardi, and "highly value[s] [its] partnership with Bacardi."  Id. ¶ 47.  Likewise, Bacardi has affirmed its "unique distribution partnerships" with Brown-Forman. Id. ¶ 48. Bacardi and Brown-Forman have entered into agreements for Bacardi to distribute Brown-Forman brands in several European markets.  Id. ¶ 49.

After receiving notice of termination from both Bacardi and Brown-Forman, Johnson Brothers Liquor responded with a letter to Bacardi alleging that Bacardi's action in aligning its distribution with Brown-Forman constituted a violation of federal antitrust laws and that terminating the 2004 North Dakota Agreement without cause constituted a violation of the Minnesota Franchise Act.  Steinberg Decl. Ex. 5.  Some correspondence ensued, and on March

21, 2011, Johnson Brother Liquors sent Bacardi a letter with a draft complaint alleging violations of the MFA and federal antitrust laws and seeking to negotiate a resolution. Steinberg Decl. Ex. 6. Less than forty-eight hours after receiving Johnson Brothers Liquor's draft complaint, on March 23, 2011, Bacardi filed its own complaint in the U.S. District Court for the Southern District of Florida, Miami Division (the "Florida action"), against Ed Philips & Sons, Johnson Brothers Liquor, and another Johnson Brothers Liquor subsidiary, Iowa Wine & Beverage Company ("Iowa Wine"). See Steinberg Decl. Ex. 8. The Florida action seeks declaratory judgment that Bacardi's termination of the 2004 North Dakota Agreement, and two other agreements with Iowa Wine, did not violate federal antitrust law or the MFA. Id. This case in Minnesota suing both Bacardi and Brown-Forman was initiated less than two weeks later on April 4, 2011.

The Florida action was assigned to Senior U.S. District Court Judge Paul C. Huck. On June 27, 2011 Judge Huck issued an order staying discovery to allow mediation of the claims related to the two Iowa agreements and on July 18, 2011 issued another order dismissing those claims without prejudice. Kranz. Decl. [Docket No. 45] Exs. D, E. Then, Johnson Brothers Liquor and Ed Phillips & Sons moved to transfer the Florida action, with its single claim relating to the 2004 North Dakota Agreement, here to federal district court in Minnesota. Judge Huck denied that motion, finding that the 28 U.S.C. § 1404(a) transfer factors weighed in favor of the Florida venue, particularly given the forum selection clause in the 2004 North Dakota Agreement. During oral argument, Judge Huck opined that the claims in this action against Brown-Forman may be compulsory counterclaims in the Florida action. Tr. of Mot. Hr'g before J. Paul C. Huck [Docket No. 56] ("Huck Hr'g Tr.") 18. Accordingly, Johnson Brothers Liquor

and Ed Phillips & Sons filed those counterclaims, without waiving arguments made before this

Court, in the Florida action on October 7, 2011.  Oct. 11, 2011 Letter [Docket No. 63] Ex. 1.

Therefore, as it now stands two nearly identical actions are proceeding in tandem, one

here in Minnesota and another in Florida, with the Florida court having already ruled to retain

jurisdiction.  Nonetheless, Plaintiffs note that Judge Huck invited this Court to rule on issues of

Minnesota law, and Plaintiffs contend that this Court should retain jurisdiction over this action

because the forum selection clause relied on by the court in the Florida Action is invalid under

the MFA.  Plaintiffs further argue that once the forum selection clause is viewed as invalid, the

first-filed rule dictates that this Court is the proper forum for this litigation.  Defendants counter

that this case should be stayed or transferred to the U.S. District Court for the Southern District

of Florida (the "Southern District of Florida"), or alternatively the Complaint in this matter

should be dismissed for failure to state a claim for which relief may be granted.

## III.  DISCUSSION

### A.      Motion to Dismiss Standard

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to

dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P.

12(b)(6).  In considering a motion to dismiss, the pleadings are construed in the light most

favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true.

Hamm, 15 F.3d at 112; Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993).  Any

ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving

party.  Ossman, 825 F. Supp. at 880.

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short

and plain statement of the claim showing that the pleader is entitled to relief."  A pleading must

allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw a reasonable inference that the defendant is liable

for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Determining

whether a complaint states a plausible claim for relief is "a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense."  Id.  "But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'"  Id. (quoting

Fed. R. Civ. P. 8(a)(2)).

**B.     MFA claims**

Plaintiffs' MFA claims arise from an alleged franchise relationship between Johnson

Brothers Liquor and Bacardi and Johnson Brothers Liquor and Brown-Forman.  Essentially,

Plaintiffs argue that Brown-Forman's dealings with Ed Phillips & Sons in North Dakota, Famous

Brands in South Dakota, Johnson Brothers Liquor in Iowa, and Johnson Brothers Liquor in

Minnesota formed a franchise-franchisee relationship between Brown-Forman and Johnson

Brothers Liquor centered in Minnesota and covering a region comprised of North Dakota, South

Dakota, Iowa, and Minnesota.  Similarly, Plaintiffs argue that Bacardi's dealings with Ed

Phillips & Sons in North Dakota created a franchise-franchisee relationship between Bacardi and

Johnson Brothers Liquor centered in Minnesota because Bacaradi was aware of Johnson Brother

Liquor's control of Ed Phillips & Sons as its parent corporation.  Based on the alleged existence

of these franchise-franchisee relationships, Plaintiffs argue that their various distribution

agreements could not be terminated except with good cause as required by Minn. Stat. § 80C.14,

subd. 3(b).

The viability of Plaintiffs' theories with respect to both Brown-Forman and Bacardi

requires the Court to disregard the individual distribution agreements, each signed by either

Brown-Forman or Bacardi and a distinct legal entity related to Johnson Brothers Liquor, and instead imply direct contracts between Bacardi and Johnson Brothers Liquor and between Brown-Forman and Johnson Brothers Liquor.  This argument is essential to Plaintiffs' MFA theories because the MFA applies only to "franchise agreements" within the purview of Minnesota law.  Minnesota cannot regulate "franchise agreements" that are formed and preformed in other states.  See In re St. Paul & K.C. Grain Co., 84 N.W. 218, 225 (Minn. 1903) (noting that "general rule" is that state statutes apply only to territory of state that enacted the statute).  Indeed, even where a party to a "franchise agreement" is a Minnesota corporation, the agreement is not within the purview of the MFA if the franchisee is not located in and does not operate in Minnesota.  Hockey Enters., Inc. v. Total Hockey Worldwide, LLC, 762 F. Supp. 2d 1138, 1146 (D. Minn. 2011).

Johnson Brothers Liquor tacitly recognizes this limitation on the MFA by carefully premising its claims only on the alleged implied contracts with Johnson Brothers Liquor, and not any of the contracts with its subsidiaries.  Pls.' Mem. of Law in Opp. to Def. Brown-Forman's Mot. to Dismiss the First Am. Compl. [Docket No. 48] 25; Pls.' Mem. of Law in Opp. to Def. Bacardi's Mot. to Dismiss the First Am. Compl. or for Transfer [Docket No. 46] 32.  Therefore, because Plaintiffs argue that their MFA claims are premised only on implied contracts, to the extent any MFA claims are premised on the express contracts, they are dismissed.  The Court now turns to the alleged implied contracts.

Johnson Brothers Liquor strenuously argues that a franchise under Minnesota law is created by "a contract or agreement, *either express or implied* . . . by which a franchisee is granted the right to engage in the business of offering or distributing goods or services . . . ." Minn. Stat. § 80C.01, subd. 4(a) (emphasis added).  Based on that language, Plaintiffs argue that a franchise was implied between Johnson Brothers Liquor in Minnesota and both Brown-Forman

and Bacardi for distribution of alcoholic beverages in certain upper Midwestern states.

However, there is nothing remarkable about Minnesota allowing franchise agreements to be implied.  Under the common law of Minnesota, contracts of any sort can be implied in fact and can be oral or written.  See McArdle v. Williams, 258 N.W. 818, 820-21 (Minn. 1935) (noting that contracts may be written, oral, implied from the actions of the parties, or some combination thereof) (citing Restatement (First) of Contracts § 21, cmt. a (1932)).  Equally uncontroversial in the law of contracts is that the formation of an implied contract is evaluated objectively.  Gryc v. Lewis, 410 N.W.2d 888, 891 (Minn. Ct. App. 1987).  In other words, "[a]n intent to be contractually bound is determined by the objective manifestations of the parties' words, conduct, and documents, and not by their subjective intent."  Norwest Bank Minn. North, N.A. v. Beckler, 663 N.W.2d 571, 578 (Minn. Ct. App. 1983) (citing Holman Erection Co. v. Orville E. Madsen & Sons, 330 N.W.2d 693, 695 (Minn. 1983)).  Plaintiffs have identified no authority, and the Court finds none, that the Minnesota legislature intended to deviate from this fundamental tenet of contract law through the MFA.  Therefore, the Court now considers in turn whether either Bacardi or Brown-Forman objectively manifested an intent to form an implied franchise agreement with Johnson Brothers Liquor.

### 1.      Bacardi

Johnson Brothers Liquor has not plausibly alleged the existence of a "franchise agreement" between it and Bacardi.  No factual content has been pled from which one may reasonably infer that an implied contract between Johnson Brothers Liquor and Bacardi exists.

Johnson Brothers Liquor's argument that an implied contract exists between it and Bacardi centers on allegations that: Johnson Brothers Liquor "controlled and managed" Ed Phillips & Sons, see Am. Compl. ¶ 9; that Johnson Brothers Liquor was "operating through" Ed Phillips & Sons in North Dakota, Am Comp. ¶¶ 22–24, 26, 28; or that Ed Philips & Sons was

"effectively managed" by Johnson Brothers Liquor and that Johnson Brothers Liquor "carried out many of the essential functions" of Ed Phillips & Sons, Am Comp. ¶¶ 25, 87.  That a parent corporation controls, manages or "effectively" manages, operates through, or carries out the essential functions of its wholly-owned subsidiary is no surprise.  These allegations say nothing about Bacardi's manifestation of assent to be contractually bound with Johnson Brothers Liquor.

The sole allegation of any direct conduct between Bacardi and Johnson Brothers Liquor is that Bacardi notified Johnson Brothers Liquor's vice-president, Bill Johnson, of its intent to cancel the 2004 North Dakota Agreement.  Am. Compl. ¶ 4.  However, any suggestion that this conduct objectively manifested an intent to contract with Johnson Brothers Liquor is belied by the factual assertion that Johnson Brothers Liquor and Ed Phillips & Sons have common officers. Id. ¶ 9.  The suggestion that this conduct was an objective manifestation of an intent to contract with Johnson Brothers Liquor is further undermined because Bacardi's notice to Bill Johnson was confirmed with a letter addressed to Ed Phillips & Sons, sent to Ed Phillips & Sons' address in North Dakota.  Id. Ex. A.  Finally, an argument that this conduct created an implied contract is rebutted by Bacardi's explicit references to the express contract between Bacardi and Ed Phillips & Sons.  That contract is unambiguous–it is between Bacardi and Ed Philips & Sons only.  See generally Steinberg Decl. Ex. 1.

Plaintiffs cannot avoid this result by conflating Ed Phillips & Sons and Johnson Brothers Liquor.  For example, Plaintiffs cannot plausibly allege that Bacardi granted Ed Phillips & Sons "and/or" Johnson Brothers Liquor the right to use Bacardi's trade name, trademarks, or other commercial symbols, Am. Compl. ¶ 88, because the express terms of the 2004 North Dakota Agreement unambiguously granted those rights to Ed Phillips & Sons only, Steinberg Decl. Ex. 1§ 6.1.  Bacardi entered into an agreement with Ed Phillips & Sons, not Johnson Brothers Liquor.  Bacardi appointed as a distributor of its products in North Dakota Ed Phillips & Sons,

not Johnson Brothers Liquor.  Therefore, Bacardi's objective intent was to contract with Ed

Phillips & Sons only.  In light of the constitutionally-endorsed state-specific alcohol distribution

regulations, see U.S. Const. amend. XXI, § 2 ("The transportation or importation into any State .

. . of intoxicating liquors, in violation of the laws therefore, is hereby prohibited."), Johnson

Brothers Liquor can offer no plausible explanation as to why Bacardi would contract with any

entity other than Ed Phillips & Sons, the only member of the Johnson Brothers Liquor corporate

family licensed to distribute alcoholic beverages in North Dakota.  Therefore, Johnson Brothers

Liquor's MFA claim against Bacardi is dismissed because no franchise agreement exists

between them.

> **2.     Brown-Forman**

Johnson Brothers Liquor bases its MFA claim against Brown-Forman on a "single

unitary multi-state franchise" theory.  In essence, Johnson Brothers Liquor argues that Brown-

Forman's acts of contracting with its subsidiaries in North Dakota and South Dakota and with it

in Minnesota and Iowa created an implied contract between Johnson Brothers Liquor and

Brown-Forman for distribution of liquor throughout these upper Midwestern states.

The allegations in the Complaint, however, do not plausibly suggest the existence of such

an implied contract.  As with Bacardi, allegations that Johnson Brothers Liquor, as parent

corporation to Ed Phillips & Sons and Famous Brands, carried out "essential functions" or

"operated" its subsidiaries from its headquarters in Minnesota is unremarkable and does not

reasonably lead to an inference that Brown-Forman intended to contract with Johnson Brothers

Liquor generally instead of with its subsidiaries individually.  Furthermore, as discussed above

with respect to Bacardi, Brown-Forman objectively manifested an intent to contract with each

entity *individually* by entering into separate contracts with each and individually granting them

rights as distributors in their respective states only.  For example, Brown-Forman chose to

contract individually with Famous Brands, granted Famous Brands the right to use Brown-Forman trademarks in South Dakota, and appointed Famous Brands an authorized distributor in South Dakota.  See generally Hardwicke Decl. Ex. 3.  The unambiguous language of each contract is an objective manifestation of an intent by Brown-Forman to be contractually bound in discrete state-by-state areas with each entity only.  Artful pleading cannot alter that result.

Unlike with Bacardi, for its MFA claim against Brown-Forman, Johnson Brothers Liquor further alleges that Brown-Forman's notice of termination corroborates its "unitary multi-state franchise" theory because Brown-Forman sent a single notice of termination that referred to a general "relationship with Johnson Brothers."  Am. Compl. Ex. B.  Johnson Brothers Liquor further notes that the letter never expressly references Johnson Brothers Liquors' subsidiaries or any distinct written agreements.  These allegations cannot plausibly support the inference that an implied contract exists.  First, the letter must be read in context.  Brown-Forman signed discrete contracts for each state.  The allegations in the Complaint are insufficient evidence from which a reasonable inference could be drawn that Brown-Forman intended to contract with Johnson Brothers Liquor for a multi-state distribution franchise given the distinct contracts with distinct legal entities covering discrete territories.  Second, the letter on its face does not support the multi-state unitary franchise theory at all.  Contrary to Johnson Brothers Liquor's characterization, the letter expressly states that notice of termination was provided for several "relationships."  Id.  The use of the plural negates the suggestion that the letter could support an inference of a single implied contract.  Such action is consistent with each contract being distinct, and is inconsistent with the multi-state unitary contract theory.

At most the letter supports the inferences that (1) Brown-Forman knew that Johnson Brothers Liquor formed wholly-owned subsidiaries and (2) Brown-Forman knew it had contracted with those subsidiaries.  Mere knowledge of the existence of the Johnson Brothers

Liquor corporate family is not a sufficient factual basis to infer that Brown-Forman manifested an objective intent to eviscerate its distinct contracts with Johnson Brother Liquor and its subsidiaries in favor of a single implied contract for distribution over the upper Midwest. Therefore, Johnson Brothers Liquor's MFA claim against Brown-Forman is dismissed.

In summary, Bacardi and Brown-Forman contracted with Johnson Brothers Liquor or its subsidiaries individually for distribution of alcoholic beverages in discrete state-by-state territories.  Bacardi and Brown-Forman's awareness of the Johnson Brothers Liquor corporate family structure and their directing termination notices to Johnson Brothers Liquor's Minnesota office does not alter the fact that Bacardi and Brown-Forman both objectively manifested intents to contract with each Johnson Brothers Liquor subsidiary individually by entering into individual contracts with those subsidiaries.  No implied contracts exist, only the express contracts are of legal significance.  Without any franchise agreements within the purview of the MFA, Plaintiffs' MFA claims (Counts I and II of the Complaint) are dismissed.

## C.    Antitrust claims

In addition to asserting claims under the MFA, Plaintiffs allege Bacardi and Brown-Forman conspired to violate federal antitrust laws by engaging in a "concerted refusal to deal" with Johnson Brothers Liquor and its subsidiaries.  As a matter of right, a private business is free to conduct business with whomever it chooses to the exclusion of others.  United States v. Colgate & Co., 250 U.S. 300, 307 (1919).   However, central to antitrust law is that what one entity may do on its own may be illegal for two or more entities to do in concert.  Fed. Trade Comm'n v. Beech-Nut Packing Co., 257 U.S. 441, 453 (1922) (noting that the Colgate rule does not extend to "contracts or combinations" that "unduly hinder or obstruct . . . trade").   For example, when two or more firms jointly agree not to deal with another, it may run afoul of antitrust laws.  Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 212–14 (1959) (holding

that concerted refusal to deal among appliance manufacturers and distributors was violation of antitrust laws).

"Whether an agreement unreasonably restrains trade is determined under one of two approaches: the per se rule and the rule of reason." Worldwide Basketball & Sport Tours, Inc. v. Nat'l Collegiate Athletic Ass'n, 388 F.3d 955, 959 (6th Cir. 2004). The per se rule is reserved for those agreements that are so obviously anti-competitive that unreasonableness is presumed and the agreements are deemed unlawful. Craftsmen Limousine, Inc. v. Ford Motor Co., 491 F.3d 380, 387 (8th Cir. 2007). In all other cases, conduct is evaluated under the "rule of reason," which looks to whether an arrangement is an "unreasonable restraint on competition." Id. (quotation omitted). "The antitrust laws, however, were enacted for 'the protection of competition not competitors . . . .'" Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 488 (1977) (quoting Brown Shoe Co. v. United States, 370 U.S. 294, 320 (1962)).

### 1.      Per Se Treatment is Not Warranted

In refusal to deal cases, such as this one, per se treatment is warranted only when the cartel refusing to deal with another possesses market power or exclusive access to an element essential to effective competition. Northwest Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co., 472 U.S. 284, 296 (1985). Here, per se treatment is unwarranted because Plaintiffs have not plausibly alleged that Bacardi and Brown-Forman possess market power or exclusive access to an element essential to effective competition.

### a.      Defendants do not have market power

Plaintiffs urge that the relevant market is the *distribution* of liquor in the upper Midwest. This is a market in which Bacardi and Brown-Forman do not participate (which is precisely why they contracted with Plaintiffs to engage in distribution for them), much less one in which they have market power. Market power is typically defined as the ability "to raise price above the

competitive level without losing so many sales so rapidly that the price increase is unprofitable and must be rescinded."  Craftsmen Limousine, 491 F.3d at 388 (quoting Midwestern Mach. Co. v. N.W. Airlines, Inc., 392 F.3d 265, 274 (8th Cir. 2004)).  Implicit in that reasoning is that a firm must be a participant in the market; otherwise, there are no "sales" within the market to be lost.  Here, Bacardi and Brown-Forman do not make any sales, and have no market power, in the market for distribution of liquor in the upper Midwest.  Furthermore, market power has been alternatively defined as the ability to control output, typically from an ability to exclude other sources of supply.  Ball Memorial Hosp. Inc. v. Mutual Hosp. Ins., Inc., 784 F.3d 1325, 1336 (7th Cir. 1986).  However, no allegations have been made that Bacardi and Brown-Forman can control output of distribution in the liquor distribution market or restrict supply of liquor.  To the contrary, Plaintiffs have alleged the existence of available alternative sources of supply of liquor, and of whiskey and rum in particular–namely Beam Global Spirits & Wine, Inc. ("Beam"), and Cruzan International, Inc. ("Cruzan").  Am. Compl. ¶ 73.  Therefore, Bacardi and Brown-Forman together do not have market power in the relevant market as defined by Plaintiffs.

Plaintiffs argue that Bacardi and Brown-Forman have market power in the market for distribution of liquor because they have the ability to "impinge" on that market.  See Insignia Sys., Inc. v. News Am. Marketing In-Store, Inc., 661 F. Supp. 2d 1039, 1063 (D. Minn. 2009) (defining market power sufficient to sustain antitrust violation as the power to "significantly impinge on competition") (quotation omitted).  Plaintiffs' argument is unavailing in several respects.  To begin, the defendant in Insignia was a participant in the relevant market.  Id. at 1057.  Therefore, Insignia does not address the issue of defining market power for a non-participant in the market, as discussed above.  Furthermore, no factual allegations support the argument that Bacardi and Brown-Forman together can "impinge" on the market for liquor distribution.  Plaintiffs carefully define the relevant market as one not for distribution of any

particular class of liquor, such as rum, whiskey, or vodka, but rather the market for distribution of all liquor.  Am. Compl. ¶ 61; Pls.' Mem. of Law in Opp. to Def. Bacardi's Mot. to Dismiss the First Am. Compl. or for Transfer 27–29; Pls.' Mem. of Law in Opp. to Def. Brown-Forman's Mot. to Dismiss the First Am. Compl. 21-22.  Yet, Plaintiffs have not articulated *how* Bacardi and Brown-Forman can impinge that market.  Plaintiffs clearly allege that much of the market for distribution of rum and whiskey in North Dakota is now concentrated with RNDC.  Am. Compl. ¶ 72.  But, no explanation has been offered as to how a concerted raise in prices for Bacardi and Brown-Forman products could impinge on the market for distribution of *all* liquors when vodka, tequila, gin, scotch whisky, liqueur, and other liquors comprise a significant portion of the relevant market as alleged by Plaintiffs, and distribution of those liquors is not concentrated in any one distributor.

Even more significantly, no explanation is given as to how Bacardi and Brown-Forman could collude to raise prices without having their customers, including RNDC, begin to favor competitors.  Absent collusion or a wider conspiracy, neither of which is alleged, the price of liquor sold from distillers to distributors is independent of the price of liquor sold from distributors to retailers, which is also independent of the price of liquor sold from retailers to customers.  Cf. 2004 North Dakota Agreement §§ 4.1–4.2 (allowing Bacardi to unilaterally determine price of products sold to Ed Phillips & Sons, and allowing Ed Phillips & Sons to unilaterally determine price of Bacardi products sold retailers if such prices are competitive).  Therefore, if Defendants colluded to raise prices charged to their distributor, the distributor must still competitively price the Defendants' products and absorb the price raise.  Absorbing the price increase, a rational distributor would invest more effort into distributing lower cost (and therefore higher profit) competitor brands.  Likewise, absent collusion between Defendants and their distributor, which is not alleged, if the distributor has market power and can raise prices on

rum and whiskey or other liquors, there is no reason to believe that the increased profits will be passed along to Bacardi and Brown-Forman given that they must still compete with other distillers, such as Beam and Cruzan.

   **b.      Defendants do not have exclusive access to an element essential to effective competition.**

   Bacardi and Brown-Forman are not the only distillers of liquor in the United States.  As noted above, if Bacardi and Brown-Forman collectively raise prices, distributors of liquor would rationally choose to invest more effort into distributing lower cost (and therefore higher profit) liquors.  The only suggestion by Plaintiffs that Bacardi and Brown-Forman could raise prices without suffering lost market share comes from the allegation that RNDC, Bacardi and Brown-Forman's present distributor in North Dakota, now controls 99% of the market for whiskey and 95% of the market for rum in that state.  However, no explanation has been offered as to why or how Bacardi and Brown-Forman could profitably raise prices for whiskey and rum without having RNDC favor other rum and whiskey manufacturers, as discussed above.  In particular, RNDC's large market share for distribution of rum and whiskey is attributable to RNDC also being a distributor for Beam and Cruzan products.  Am. Compl. ¶ 73.  No explanation is given as to how or why Bacardi and Brown-Forman could raise their prices without having RNDC, or any other distributor, favor Beam and Cruzan products to the detriment of the would-be cartel.  Beam and Cruzan are not alleged to be co-conspirators and neither is RNDC.

   Furthermore, even if the relevant market were revised to be distribution of whiskey and rum, the allegation that RNDC has a large market share for distribution of whiskey and rum in North Dakota cannot plausibly support an antitrust violation because Plaintiffs have defined the relevant market to include an area larger than just North Dakota.  Brown-Forman and Bacardi have evidently chosen as distributors entities other than RNDC in both Minnesota and Iowa.  <u>See</u>

Am. Compl. Ex. B (noting Brown-Forman moved its spirits and wine distribution to non-RNDC entities in Minnesota and Iowa).  Plaintiffs offer no explanation as to how alignment with those other entities, also non-conspirators, would allow Brown-Forman and Bacardi to control output, restrict access to supply, or raise prices.

##### 2.      Plaintiffs Have Failed to State a Claim under the Rule of Reason

Under the Rule of Reason, an arrangement between firms is repugnant to federal antitrust laws if it constitutes an "unreasonable restraint on competition." Craftsmen Limousine, 491 F.3d at 387.  Plaintiffs have failed to identify an unreasonable restraint on competition resulting from Bacardi and Brown-Forman's concerted refusal to deal with Plaintiffs.

Plaintiffs' entire argument focuses on the concentration of the market for distribution of rum and whiskey with RNDC.  Plaintiffs aver "Defendants' joint conduct and illegal agreement eliminates competition between liquor distillers, including but not limited to Bacardi, Brown-Forman, Beam, and Cruzan, and eliminates interbrand competition between their products by combining their distribution into one distributor."  Pls.' Mem. of Law in Opp. to Def. Brown-Forman's Mot. to Dismiss the First Am. Compl. 19.   But, Plaintiffs may not rely on mere recitation that competition will be eliminated; they must allege factual content that plausibly suggests such an occurrence.  See Twombly, 550 U.S. at 555-57 (noting that "formulaic recitation" of elements is insufficient pleading, well-pled allegations must state plausible grounds for relief).

Plaintiffs do not plausibly suggest that interbrand competition will cease.  Bacardi and Brown-Forman are not alleged to have any agreement with Beam or Cruzan.  Therefore, Plaintiffs must articulate some reason as to *why* Bacardi and Brown-Forman will no longer have to compete with Beam or Cruzan.  Plaintiffs have not done so.  As discussed above, merely using the same distributor will not end interbrand competition.  Without market power if a brand or

cartel of brands raises prices, consumers will merely substitute a cheaper competitor brand.  By way of illustration, virtually all drug stores purchase multiple brands of the same products, yet interbrand competition continues at all levels of the supply chain.  Each brand still must compete for end-customers as well as for placement in drug stores.  Likewise, there is no reason to assume that merely because Bacardi and Brown-Forman sell to a customer in common with Beam and Cruzan that competition will cease among those firms.  In that market, if Bacardi and Brown-Forman collude to raise prices, it will be to their own detriment as distributors will begin to favor now-cheaper (and now more profitable) brands, like Beam or Cruzan products.  The Complaint does not allege the rationale of how or why interbrand competition will be stifled because a single distributor will buy and distribute competing brands of liquor.

Furthermore, assuming *arguendo* that the concentration of whiskey and rum brands in RNDC in North Dakota will cause an increase in whiskey and rum prices for retailers, there is no reason to believe that Bacardi or Brown-Forman will benefit or are culpable in any way.  No allegations of a wider conspiracy involving Beam, Cruzan, or other distributors has been alleged.  Absent some wider conspiracy, if another distributor has monopolized the distribution market, a Sherman Act § 2 claim may lie against them, but such monopolization was not the result of the alleged concerted refusal to deal.  Rather, the monopolization was the result of the actions of the distributor alone.  Plaintiffs allege that "[b]ecause RNDC now markets several brands that were once competitors . . . [RNDC] no longer has the incentive to compete with the remaining distributor, [Ed Phillips & Sons], whose market share for rum and whiskey is negligible."  Am. Compl. ¶ 83.  While the concentration of rum and whiskey distribution with RNDC may be anti-competitive, it cannot be said to be an anti-competitive *effect* of any action by Defendants.  The Complaint asserts that the concentration of the market for distribution of whiskey in North Dakota was the result of the alignment of Brown-Forman and Beam, entities that are *not* alleged

to have any agreement or otherwise be co-conspirators.  <u>See</u> Am. Compl. ¶¶ 10-11, 73

(indicating that Brown-Forman and Beam manufacture whiskey, but Bacardi does not).

Similary, the Complaint makes clear that the concentration of the market for distribution of rum

in North Dakota was the result of alignment of Bacardi and Cruzan, entities that are *not* alleged

to have any agreement or otherwise be co-conspirators.  <u>See</u> Am. Compl. ¶¶ 10-11, 73

(indicating that Bacardi and Cruzan manufacture rum, but Brown-Forman does not).

The result here is bolstered by the result in a nearly identical, albeit forty-plus year-old,

case.  In <u>Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd.</u>, two distillers, Calvert and

Barton, jointly decided to use a single distributor McKesson.  416 F.2d 71, 73-74 (9th Cir. 1969),

<u>cert. denied</u>, 397 U.S. 1062 (1970).  Calvert's former distributor, Hawaiian Oke & Liquors, Ltd.,

then brought suit alleging an antitrust violation from Calvert and Barton's concerted refusal to

deal.  <u>Id.</u>  Without any evidence of an anti-competitive effect or motive, the court there held that

no unreasonable restraint of trade had resulted from the joint decision to align in a single

distributor, and overturned a jury verdict for the plaintiff.  <u>Id.</u> at 76-80.  The court reasoned that

the distillers had a legitimate business interest in selecting a distributor with a "well rounded

group of lines."  <u>Id.</u> at 80.  As in <u>Seagram & Sons</u>, without plausible allegations that Bacardi and

Brown-Forman's alignment of their products in a single distributor will have some anti-

competitive effect, Plaintiffs have not adequately alleged an antitrust violation.

**D.    Stay and Transfer**

In addition to addressing the merits of the case, the parties have dedicated a substantial

volume of briefing to arguing which forum is appropriate for this litigation to proceed.  The first

in time filing was in the Southern District of Florida.  However, the two "red flags" identified by

both the Eighth and Eleventh Circuits–filing a declaratory judgment and bringing a lawsuit after

being put on notice of impending litigation in another forum–are present here and may warrant

"compelling circumstances" for allowing the litigation to proceed in Minnesota.  Manuel v. Convergys Corp., 430 F.3d 1132, 1135 (11th Cir. 2005) (noting that filing of declaratory judgment action and filing in anticipation of litigation are factors in determining whether compelling circumstances exist for exception to first-filed rule); N.W. Airlines, Inc. v. Am. Airlines, Inc., 989 F.2d 1002, 1007 (8th Cir. 1993) (noting that notice that litigation is imminent and filing of declaratory judgment action are red flags that may be compelling circumstances for abrogating first-filed rule).

An additional factor to consider is that Judge Huck denied a § 1404(a) transfer motion by Plaintiffs and in so doing noted that the Florida action was technically filed first.  Huck Hr'g Tr. 56.  The § 1404(a) motion in the Florida action was argued by all parties under what is known in the Eighth Circuit as the Terra factors[2]–convenience of the witnesses, convenience of the parties, and the interests of justice.  Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997).  The interests of justice factor looks to, among other things, where the lawsuit was filed as a consideration.  Id. at 696 (noting that the plaintiff's choice of forum is considered under interests of justice).  Indeed, Plaintiffs here (Defendants in the Florida action), briefed the first-filed rule in the Florida action as an element of the Plaintiffs' (Defendants here) choice of forum. See Steinberg Decl. [Docket No. 34] Ex. 10 at 13–15.  However, such analyses may be viewed as distinct, with § 1404(a) merely serving as the procedural mechanism, without respect to the tri-part analysis developed for § 1404(a) in other contexts, for effectuating a transfer appropriate under the first-filed doctrine.  See Zimmer Enters., Inc. v. Atlandia Imports, 478 F. Supp. 2d 983, 989 (S.D. Ohio 2007) (noting that first-filed rule and transfer of venue analysis are "separate questions, the analysis of which are conducted separately").  Therefore, it appears the question of

---

[2] Named after Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688 (8th Cir. 1997).

which court, the Southern District of Florida or the District of Minnesota, properly has

jurisdiction under the first-filed doctrine has not yet been fully addressed.

Another significant consideration is that the 2004 North Dakota Agreement includes a

forum selection clause.  2004 North Dakota Agreement § 11.2.  A forum selection clause may

trump the first-filed doctrine.  See, e.g., Nat'l Union Fire Ins. Co. v. Las Vegas Professional

Football Limited P'ship, 409 Fed. App'x 401, 403 (2d Cir. 2010) (disregarding first-filed rule in

favor of forum selection clause).  However, a forum selection clause may not be applicable

where it applies to only one of multiple defendants, as is the case here.  See Vangura Kitchen

Tops, Inc. v. C & C N. Am., Inc., No. 08cv1011, 2008 WL 4540186, at *5 (W.D. Pa. Oct. 7,

2008) (Where . . . a forum selection clause is only applicable to claims against one of multiple

parties, by its terms such clause does not supply venue over claims sounding in tort against third

parties.") (citation omitted).

The resolution of the nuances of appropriate venue need not be reached here.  Bacardi's

Motion to Dismiss or Stay was made in the alternative.[3]  When a motion is pursued in the

alternative, the Court has discretion to consider the alternative requests in any order.  See United

States v. Thomas, Civil No. 08-788-GPM, 2009 WL 792571, at *3 (S.D. Ill. Mar. 24, 2009)

(granting in part motion with respect to dismissal on merits, and denying in part same motion as

to dismissal for improper venue or for transfer).  Here, the Court exercised that discretion to

consider the portion of the motion seeking dismissal first.  As such, Bacardi's arguments related

to transfer are now moot.  Indeed, it appears that much of the complexity regarding which forum

is most appropriate is owed to the novel "extra-contractual" theories Plaintiffs pursued for their

---

[3] Bacardi's Motion to Stay and Brown-Forman's Motion to Transfer or Stay were both
made after each had moved for dismissal.  Therefore, considering those motions in the order they
were presented to the Court, they are now moot and are denied.

MFA claims.  Judge Huck invited this Court to weigh in on Plaintiffs' MFA theories, Huck Hr'g

Tr. 39.  The theories are rejected, as are Plaintiffs' antitrust allegations.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.      Bacardi's Motion to Dismiss First Amended Complaint or for Transfer [Docket

No. 24] is **GRANTED** to the extent it seeks dismissal;

2.      Brown-Forman's Motion to Dismiss First Amended Complaint [Docket No. 26] is

**GRANTED**;

3.      Bacardi's Motion to Stay [Docket No. 30] is **DENIED** as moot;

4.      Brown-Forman's Motion to Stay or Transfer [Docket No. 66] is **DENIED** as

moot; and

5.      All claims in the Complaint are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


BY THE COURT:


_____ s/Ann D. Montgomery _____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  November 17, 2011.